JUDGE JONES

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

08 CV 4855

JACQUELYN JOHNSON,

Plaintiff

-against-

CITY OF NEW YORK;
NYPD OFFICER MICHAEL KREIMAN, Shield
10939,

Defendants

Index No.
ECF Case

A jury trial is demanded

Plaintiff Jacquelyn Johnson, by her attorneys, the Law Office of
Ronald L. Kuby, hereby brings this action under 42 U.S.C. §1983 to redress her civil
and legal rights, and alleges as follows:

U.S.D.C. S.D. N.Y.
CASHIERS

## STATEMENT OF THE ACTION

1.      Plaintiff was arrested by defendant police officer without
reasonable cause or reason, was illegally detained for over 24 hours, was strip
searched without justification, and maliciously prosecuted.

## JURISDICTION AND VENUE

2.      Jurisdiction in this Court is claimed under 42 U.S.C. §1983 and.
principles of pendant jurisdiction.  Venue is proper because defendant City of New York
is administratively located within the Southern District of New York.

## PARTIES

3.      Plaintiff Jacquelyn Johnson is and was at all times relevant  a
citizen and resident of the City and State of New York.

4.      Defendant PO Kreiman is an employee and agent of defendant
City of New York.  At all times relevant he acted in his capacity as a New York City

1

police officer, in furtherance of his employer's interests, and in conformance with the laws, rules, regulations, usages and practices of the City of New York and the New York City Police Department.

5.      Defendant City of New York is a municipal corporation.  It is authorized by its charter to maintain a police department, for which it retains responsibility.

## NOTICE

6.      A notice of claim was served on the City of New York Comptroller's Office on March 4, 2008.

## FACTS

7.      On Sunday, December 16, 2007, at approximately noon, plaintiff received a telephone call from an Officer Cordell of the 50th Precinct in the Bronx, informing her that a former roommate of hers had been arrested, and asking her to come to the precinct to retrieve his automobile.

8.      Plaintiff responded that she could not drive because her driver's license had expired.

9.      Officer Cordell asked her to come in anyway.

10.      She arrived at the 50th Precinct at approximately 12:30pm and asked the desk sergeant for officer Cordell.

11.      She was referred to defendant officer Kreiman, a detective, who asked her for identification.

12.      She gave Det. Kreiman her expired driver's license.  He left the

2

police officer, in furtherance of his employer's interests, and in conformance with the laws, rules, regulations, usages and practices of the City of New York and the New York City Police Department.

5. Defendant City of New York is a municipal corporation. It is authorized by its charter to maintain a police department, for which it retains responsibility.

## NOTICE

6. A notice of claim was served on the City of New York Comptroller's Office on March 4, 2008.

## FACTS

7. On Sunday, December 16, 2007, at approximately noon, plaintiff received a telephone call from an Officer Cordell of the 50th Precinct in the Bronx, informing her that a former roommate of hers had been arrested, and asking her to come to the precinct to retrieve his automobile.

8. Plaintiff responded that she could not drive because her driver's license had expired.

9. Officer Cordell asked her to come in anyway.

10. She arrived at the 50th Precinct at approximately 12:30pm and asked the desk sergeant for officer Cordell.

11. She was referred to defendant officer Kreiman, a detective, who asked her for identification.

12. She gave Det. Kreiman her expired driver's license. He left the

2

room with it.

13.    After some time he returned and told her the license was forged.

14.    Plaintiff had obtained the license in or about 1994, through the normal process, from the New York State Motor Vehicle Department.  She denied that it was forged.  She supported the denial by telling him that she had in the past been a corrections officer at Bedford Hills prison, and that, as he probably knew, a valid driver's license was a requirement for becoming a corrections officer.

15.    Det. Kreiman arrested her for possessing a forged instrument and for criminal impersonation.

16.    She was removed to a cell in the precinct with bars fronting on a space continually occupied and crossed  by police officers and precinct personnel.

17.    A female officer entered the cell and told her to remove all her clothes.  She did so.

18.    The female officer told her to squat and spread her buttocks and genitalia.  She did so.

19.    Male officers and precinct personnel observed her at all times during the strip search.

20.    After some hours she asked to use the bathroom.  She was ignored and was compelled to use a toilet in the cell, again in full view.

21.    At about 4am she was handcuffed wrist-to-wrist with two other female arrestees and taken to Bronx Central Booking, where she was placed in a cell occupied by approximately 15 other women.

22.    One of the women who had been in the precinct and had

3

overheard some of her interaction with Det. Kreiman informed the other women in the cell that plaintiff had been a corrections officer.

23.    She felt a sharp hostility emanating from the other women, and for the next several hours experienced great fear.

24.    At approximately 4pm she was taken before a judge.    The accusatory instruments, including a sworn affidavit by Det. Kreiman, charged her with possession of a forged instrument and criminal impersonation.

25.    She was released on her own recognizance.

26.    She requested the return of her possessions and was told that her expired license would be retained for evidence.

27.    Her case continued until February 11, 2008, at which time the People declined prosecution.   The case was dismissed and the records sealed.   Her license was not returned to her.

28.    She was emotionally and mentally distraught by the experience and sought treatment at Jacobi Medical Center, in the Bronx.   She received anti-depression medication and psychotherapy,  both treatments continuing to this day.

29.    She has recently been hospitalized for depression.

30.    On information and belief defendants detained plaintiff under contrived charges for reasons that are yet to be determined.

4

## CAUSES OF ACTION

31.    All allegations above are hereby incorporated by reference into each and every cause of action hereafter stated.

### 1.  Violation of Civil Rights – false arrest and false imprisonment

32.    Defendants arrested and detained plaintiff without reasonable cause or justification.

### 2.  Violation of Civil Rights – malicious prosecution

33.    Defendants continued their prosecution of plaintiff although they had no basis to believe plaintiff had committed a crime.

### 3.  Violation of civil rights – strip search

34.    Defendants subjected plaintiff to a strip search although they had no justification for doing so.  They compelled her to undress and to expose herself in public, with men observing.

### 4.  Liability of City of New York for civil rights violations

35.    The civil rights violations complained of herein are directly caused by of New York City and New York City Police Department policies, procedures, and practices.   In 2006, the latest year for which statistics are available, 25,452 allegations of misconduct were filed against New York City police officers.[1]  Of these, only 264 were substantiated.[2]  During this same period,  no police officers were terminated, 17

---

[1] *See* NYC Civilian Review Board Status Report, 2006, page 51
http://www.nyc.gov/html/ccrb/pdf/ccrbann2006.pdf

[2] *Id.* at page 93

5

were suspended from 1 to over 31 days, or lost vacation time; 53 were reprimanded; and 197 were subject to re-training.[3] Plaintiff respectfully submits that this minuscule rate of disciplinary consequence in effect represents official sanction – even encouragement – for police officers to violate the law. Similarly, NYC Civilian Review Board investigations have confirmed a pattern of illegal and improper strip searches in New York City police precincts, despite attempts by the judiciary to control such practice. *See* letter from CCRB to police commissioner Kelly, dated May 12, 2004.[4]

### 5. False arrest and false imprisonment under state law

### 6. Malicious prosecution under state law.

### 7. Unlawful strip search under state law

### 8. Invasion of privacy

36.     By forcing plaintiff to disrobe and to display her sexual parts in a public place, before a variety of persons with no consent or privilege to observe her, defendants invaded plaintiff's privacy.

### 9. Wilful infliction of emotional distress

37.     Coercing plaintiff to strip naked before strangers and to display her sexual parts, when there was no legitimate reason to do so, on information and belief with the intent to humiliate and destabilize her, constituted extreme and outrageous conduct, beyond the scope of acceptable civilized behavior

### 10. *Respondeat Superior*

38.     Defendant Det. Kreiman acted at all times relevant in furtherance

---

[3] *Id.* at page 102

[4] http://www.nyc.gov/html/ccrb/pdf/stripsearchletter.pdf

of his employer's interests. City of New York is liable for the injuries arising out of his

conduct under a theory of *Respondeat Superior.*

New York, New York
dated: 5/16/08

George Wachtel [GW5921]
Law Office of Ronald L. Kuby
119 West 23st., Suite 900
New York, NY 10011
(212) 529-0223

**Verification**

JACQUELYN JOHNSON, being duly sworn, deposes and says: I have read the above
instrument and it is true except as to the portions marked "on information and belief,"
and as to those I believe them to be true.

Jacquelyn Johnson

Sworn to before me this   16th day of May   ,2008

**GEORGE WACHTEL**
**Notary** Public, State of New **York**
No. 02WA6029976
**Qualified** in New York County
**Commission** Expires August 30, 2009

7